Barbara **SPARKS**, Plaintiff-Appellant,

v.

**PILOT FREIGHT CARRIERS, INC.,**
Defendant-Appellee.

No. 86–8790.

United States Court of Appeals,
Eleventh Circuit.

Oct. 20, 1987.

David R. Sweat, Jeanne M.L. Player, Athens, Ga., for plaintiff-appellant.

Morgan, Lewis & Bockius, James J. Kelley, Washington, D.C., for defendant-appellee.

Before HILL and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Barbara Sparks appeals the district court's grant of summary judgment in Sparks' sexual harassment and sex discrimination action filed against her former employer, Pilot Freight Carriers, Inc. (Pilot Freight), pursuant to Title VII, 42 U.S.C. § 2000e *et seq*. We reverse the grant of summary judgment and remand.

## I. STATEMENT OF FACTS

Appellant Sparks was employed by Pilot Freight as a billing clerk in its Duluth, Georgia trucking terminal from May 1983 until March 1984. In February 1984, Pilot Freight promoted Dennis Long, a former sales manager in the Atlanta terminal, to the position of terminal manager of the Duluth terminal. As terminal manager, Long held the highest position in the Duluth terminal and, according to Sparks, had authority to exercise virtually unfettered discretion over personnel matters, including the hiring and firing of employees. According to Sparks, the only Pilot Freight employees superior to Long were stationed in Pilot Freight's headquarters in North Carolina.

Sparks alleges that shortly after Long arrived in Duluth he began to harass her. One of the earliest instances occurred when Long called her into his office and asked her if she was married or had a boyfriend, and if she could become pregnant. Sparks claims that after she was promoted to general secretary, with Long as her boss, in March 1984, Long's unwelcomed sexual harassment of her continued. This harassment included such acts as: putting his hands on Sparks to rub her shoulders or "fool with" and smell her hair; repeatedly inquiring into Sparks' personal life; on one occasion asking her if he could come to her house with a bottle of wine, and, having been refused, calling out to her over the public address system as she was leaving the office stating that this was her "last chance;" making threatening remarks to Sparks, such as "you'd better be nice to me," "your fate is in my hands," "revenge is the name of the game;" and at least one other remark that the district court concluded was "too sexually explicit" to repeat. Sparks did not notify any of Long's superiors at Pilot Freight that he was harassing her.

In May 1984, Pilot Freight closed its Duluth terminal. Long was transferred to Atlanta where he resumed his former job as sales manager. Sparks and several other employees also were transferred to the Atlanta terminal; other Duluth employees were laid off. The terminal manager of the Atlanta terminal was Carl Connell.

Sparks was given a job as a billing clerk on the night shift where she worked for three days. On the fourth day, Thursday, May 10th, Sparks allegedly called the office and asked Connell's secretary, Hilda Tatum, whether she could change her working hours. Later that day Tatum called Sparks back to tell Sparks that she could not change her hours. Sparks allegedly responded that she could not come in that night because she was sick. Curtis Turner, a male billing clerk, also called in sick that day. The following day, Connell called Sparks at home several hours before her shift was to begin and fired her. Turner was not fired. Sparks was replaced by John Briscoe, a billing clerk who had been laid off when the Duluth terminal was closed.

Sparks filed the instant action against Pilot Freight, alleging three violations of Title VII. Her first claim is that during her tenure at the Duluth terminal she was subject to hostile working environment sexual harassment by her boss, Dennis Long. Her second two claims relate to her dis-

charge: the first being that Connell engaged in unlawful disparate treatment because of sex when he discharged her and not Turner; the second is that her discharge resulted from *quid pro quo* sexual harassment in that Long induced Connell to fire her in retaliation for her refusal to accede to his sexual demands.

The district court granted summary judgment for Pilot Freight on all three claims. We reverse.

## II. WORKING ENVIRONMENT SEXUAL HARASSMENT

Title VII of the Civil Rights Act of 1964 makes it unlawful for "an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a)(1).

### A.

■ In *Meritor Sav. Bank, FSB v. Vinson*, the Supreme Court held that an employee may establish a violation of Title VII by proving that the employee's employer engaged in discrimination based on sex, including sexual harassment, which created a hostile or abusive work environment.[1] 477 U.S. 57, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986); *accord Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982). An employee asserting a claim of hostile working environment sexual harassment by an "employer" must prove the following in order to establish a *prima facie* case: (1) that the employee belongs to a protected group, *Henson*, 682 F.2d at 903; (2) that the employee was subject to "unwelcome" sexual harassment, *Vinson*, 106 S.Ct. at 2406; *Henson*, 682 F.2d at 903; 29 C.F.R. § 1604.11(a) (1985); (3) that the harassment complained of was based on sex, *Henson*, 682 F.2d at 903; and (4) that the harassment complained of affected a "term, condition, or privilege" of employment in that it was "sufficiently severe or pervasive 'to

alter the conditions of [the victim's] employment and create an abusive working environment.'" *Vinson*, 106 S.Ct. at 2406 (brackets in original) (quoting, *Henson*, 682 F.2d at 903).

The district court concluded that Sparks could survive summary judgment as to these four elements of her *prima facie* case. The court granted summary judgment for the defendant, however, because it concluded that Sparks failed to establish a necessary fifth element: Pilot Freight's liability for Long's actions under the theory of *respondeat superior.*

The district court based its decision that *respondeat superior* theory applies to this action on this court's decision in *Henson, supra.* There we held that a Title VII plaintiff who seeks to hold her employer liable for sexual harassment by her supervisor or co-workers must demonstrate that the employer is liable for the supervisor or co-worker's conduct under the theory of *respondeat superior.* Consequently, the plaintiff cannot prevail unless she can show that her employer "knew or should have known of the harassment in question and failed to take prompt remedial action." 682 F.2d at 905. Applying *Henson*, the district court concluded that Sparks could not prevail because she had not notified any supervisor at Pilot Freight that she was being sexually harassed by Long.

■ In applying the *respondeat superior* requirement of *Henson*, however, the district court overlooked the fact that the *Henson* court's decision to employ *respondeat superior* theory rested on its assumption that the plaintiff's alleged harasser was her supervisor but not her "employer." *Henson*, 682 F.2d at 905, n. 9. Here, in contrast, Sparks alleges that Long was both her supervisor *and* her "employer," as that term is defined under Title VII.

Under Title VII an "employer" is directly liable for its own sexual harassment of its employees. *See* 42 U.S.C. § 2000e–2(a)(1),

---

1. Through the operation of *respondeat superior* theory an employer also may be liable to an employee for working environment sexual harassment of the employee by one not properly

characterized as the employee's "employer." *Henson v. Dundee*, 682 F.2d 897, 902, 905 & n. 9 (11th Cir.1982).

29 C.F.R. § 1604.11(c). Thus, where the harasser is plaintiff's "employer," *respondeat superior* theory does not apply and plaintiff need not establish that she gave anyone notice of the harassment.[2] *Hunter v. Allis-Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1422 (7th Cir.1986); *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.,* 755 F.2d 599, 604 (7th Cir. 1985); *see Vinson,* 106 S.Ct. 2408–09; *Henson,* 682 F.2d at 905 n. 9.

The Act defines the term "employer" as a "person engaged in an industry affecting commerce ... *and any agent of such a person.*"[3] 42 U.S.C. § 2000e(b) (emphasis added). Therefore, if Long was acting as an "agent" of Pilot Freight when he sexually harassed Sparks, Pilot Freight is directly liable to Sparks for Long's conduct— provided Sparks can establish the four elements of her *prima facie* case outlined above. *See Vinson,* 106 S.Ct. at 2408; *Horn,* 755 F.2d at 604.

### B.

Title VII does not define the term "agent." Rather, in determining whether a supervisor was acting as an "agent" for Title VII purposes, courts must look for guidance to common law agency principles. *Vinson,* 106 S.Ct. at 2408, *citing,* 42 U.S.C. § 2000e(b) *and* Restatement (Second) of Agency §§ 219–237 (1958).

In the instant case, the district court, concluding incorrectly that this "agency" determination is simply one way of establishing *respondeat superior,*[4] held, also incorrectly, that under common law agency principles Long was not an "agent" of Pilot Freight when he harassed Sparks. Applying the general rule of agency that "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment," Restatement (Second) of Agency, § 219(1), the district court determined that Pilot Freight was not liable for Long's actions because Long was not acting within the scope of his employment when he harassed Sparks. The district court based this ruling on its determination that Long was not "actuated by some purpose to serve the master" when he harassed Sparks.[5] *Sparks,* No. C85–

---

2. *See* Note 4, *infra.*

3. *The precise language of § 2000e(b) is as follows:*

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person,* but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

(Emphasis added).

4. Because the acts of an employer's "agents" are those of the employer, an employer is directly, rather than indirectly, liable for its "agents" Title VII violations. *See Hunter v. Allis-Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1422 (7th Cir.1986). In contrast, the indirect liability of *respondeat superior* theory is implicated where the person who engaged in the allegedly unlawful sexual harassment was *not* the plaintiff's statutory "employer"—for example, where the alleged harasser was one of plaintiff's coworkers or was a supervisor with no authority over plaintiff. *See Vinson,* 106 S.Ct. at 2409, 2422 (Marshall, J. concurring) (notice to employer may be necessary where supervisor was not acting as an agent in that he had no authority over the employee he was harassing); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 615, 619–20 (6th Cir.1986) (same), *cert. denied,* —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Henson,* 682 F.2d at 905 & n. 9; 29 C.F.R. § 1604.11(d).

5. Under common law agency principles, "a master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) of Agency, § 219(1). In order for a servant's conduct to be properly considered "within the scope of employment" it must: (1) be of the kind he is employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be actuated, at least in part, by a purpose to serve the master. *Id.* at § 228(1). Alternatively, "conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized

2941A, slip op. at 8, *citing* Restatement (Second) of Agency §§ 219(1), 228(2).

Although the district court recognized that an employer may be liable under section 219(2) of the Restatement for its servant's actions even though the servant was not acting "within the scope of his employment," the district court concluded that none of section 219(2)'s exceptions to the general rule of section 219(1) apply to this case. Accordingly, the district court granted summary judgment for Pilot Freight on the issue of whether Long was acting as Pilot Freight's agent when he harassed Sparks. *Sparks*, No. C85–2941A, slip op. at 9, *citing* Restatement (Second) of Agency § 219(2).

In holding that none of the enumerated exceptions to the "within the scope of employment" rule apply, the district court apparently overlooked section 219(2)(d). This section provides that a master is liable for the torts of his servants acting outside the scope of their employment where:

> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, *or he was aided in accomplishing the tort by the existence of the agency relationship.* (emphasis added).

Under this section, unlike under section 219(1), the master is not insulated from liability by the fact that the servant was acting entirely for his own benefit. *See id.* at §§ 219(2), 235 Comment E; *see also id.* at §§ 262, 265.

time and space limits, or too little actuated by a purpose to serve the master." *Id.* at § 228(2).

**6.** *See* Note 9, *infra.*

**7.** To the extent that the *Henson* court's discussion of hostile work environment sexual harassment can be read as holding that notice to the defendant employer is required even where the supervisor was the defendant's agent, and thus the victim's "employer," it was overruled by the Supreme Court in *Vinson. Vinson,* 106 S.Ct. at 2408.

**8.** While we recognize that the rule the EEOC proposed in *Vinson, supra,* is not an official regulation, we adopt it because we conclude that it is simply an application in the Title VII context of § 219(d)(2), Restatement (Second) of Agency—the rule which, under *Vinson, supra,* we conclude properly governs this action.

Interpreting general agency rules, and presumably relying primarily on section 219(2), the Equal Employment Opportunity Commission (EEOC) has concluded that a supervisor acts as an "agent" of the employer for Title VII purposes, thus rendering the employer directly liable for the supervisor's actions, "where [the] supervisor exercises the authority actually delegated to him by his employer, by making or threatening to make decisions affecting the employment status of his subordinates." *Vinson,* 106 S.Ct. at 2407–08 (stating, without ruling on, the position of the EEOC in its amicus brief);[6] *see Horn,* 755 F.2d at 605 (employing the same rule). The EEOC reasoned that agency principles require holding the employer liable because it was the employer's delegation of authority that empowered the supervisor to so act. *Vinson,* 106 S.Ct. at 2408; *accord Horn,* 755 F.2d at 604–05; *see* § 219(d)(2), Restatement (Second) of Agency; *see also Henson,* 682 F.2d at 909 (applying this analysis to hold an employer strictly liable for *quid pro quo* sexual harassment by its supervisors).[7] This liability is direct; the employer cannot find shelter in the claim that it neither had notice of, or approved of, the unlawful conduct. *Vinson,* 106 S.Ct. at 2408; *see Horn,* 755 F.2d at 604–05; 29 C.F.R. § 1604.11(c); § 219(d)(2), Restatement (Second) of Agency.

Adopting this rule and applying it to the instant case,[8] we observe that it is undisputed that when Pilot Freight made

Moreover, we observe that this rule is consistent with the EEOC guidelines, which are entitled to great deference, *Vinson,* 106 S.Ct. at 2409, and which provide:

> [A]n employer ... is responsible for its acts and those of its agents *and supervisory employees* with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of the occurrence. 29 C.F.R. § 1604.11(c).

Finally, we note that other circuits have similarly applied agency principles to actions involving an employer's liability for sexual harassment by its supervisors. *E.g., Horn,* 755 F.2d at 604–05; *Vinson v. Taylor,* 753 F.2d 141, 148 (D.C.Cir. 1985), *aff'd sub. nom., Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), *on remand, Vinson v. Taylor,* 801 F.2d

Long terminal manager of the Duluth terminal it vested him with both actual and apparent authority to alter Sparks' employment status—including authority to fire her. Moreover, the evidence, considered in the light most favorable to Sparks, shows that Long used the authority delegated to him by Pilot Freight to assist him in harassing Sparks: specifically, Long repeatedly reminded Sparks that he could fire her should she fail to comply with his advances.[9] Therefore, we conclude that, when the evidence is viewed in the light most favorable to Sparks, Sparks has established a genuine issue of material fact as to whether Long was acting as Pilot Freight's agent when he engaged in the alleged sexual harassment of Sparks. She consequently has established a genuine issue of material fact as to whether Pilot Freight is directly liable to her under Title VII. *See Hamilton v. Rogers,* 791 F.2d 439, 442–43 (5th Cir.1986); *Horn,* 755 F.2d at 604–05. Accordingly, the district court's grant of summary judgment on Sparks' hostile working environment sexual harassment claim must be reversed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510–11, 2513–14, 91 L.Ed.2d 202 (1986).

## C.

Pilot Freight contests this conclusion, asserting that it cannot be liable for Long's actions because Sparks did not complain to anyone at Pilot Freight about Long's conduct. Pilot Freight cannot prevail on this claim.

To the extent that Pilot Freight's claim is that an employer is not liable for sexual harassment by its supervisors absent "notice," its claim is not even colorably valid given the Supreme Court's holding in *Vinson*.[10] 106 S.Ct. at 2408 (employer liable for agent's acts even absent notice); *accord Horn,* 755 F.2d at 604; 29 C.F.R. § 1604.11(c).

Pilot Freight's claim also fails to the extent that it is an attempt by Pilot Freight to benefit from the language in *Vinson* indicating that an employer may be insulated from liability for hostile working environment sexual harassment where (1) the employer has an explicit policy against sexual harassment, and (2) it has effective grievance procedures "calculated to encourage victims of harassment to come forward" that the plaintiff did not employ. *Vinson,* 106 S.Ct. at 2408–09. Pilot Freight has proffered no evidence that it had either a policy against sexual harassment or an effective grievance procedure; Sparks has asserted that Pilot Freight had neither. For summary judgment purposes we accept Sparks' allegation as true. *See Liberty Lobby,* 106 S.Ct. at 2513–14. We therefore conclude that the Court's suggestion in *Vinson* that an employer may be able to shield itself from Title VII liability for its supervisors' sexual harassment by enacting an explicit policy against sexual harassment and an effective grievance procedure—so as to divest its supervisors of actual and apparent authority to harass employees—has no bearing on this appeal.

## D.

Nor are we inclined to accept Pilot Freight's argument that, even if we re-

---

1436 (1986); *see Hamilton v. Rodgers,* 791 F.2d 439, 442–43 (5th Cir.1986) (employing the same rationale to find an employer liable for race discrimination by intermediate supervisors).

**9.** The evidence before us, when considered in the light most favorable to Sparks, shows that Long did threaten to use the authority delegated to him to Sparks' detriment. Therefore, we need not address the issue raised by the EEOC, and not resolved by the Supreme Court, in *Vinson:* what rule should govern the employer's liability for sexual harassment by its supervisors where the sexual harassment claim rests "exclusively" on a "hostile environment" theory, in that the supervisor neither explicitly nor implic-

itly threatened to use his authority against the victim. *See Vinson,* 106 S.Ct. at 2408.

**10.** Pilot Freight's argument reflects a lack of understanding of the basis of its liability for Long's acts. As the Seventh Circuit recently explained in *Allis-Chalmers, supra,* an employer is directly liable for its supervisors' violations of Title VII because those acts are viewed as acts of the employer itself. 797 F.2d at 1422. Therefore, there is no reason to have a notice requirement because the supervisory employee is deemed to be the employer itself and thus notice to the supervisor that he is engaging in unwelcomed harassment is notice to the employer. *See id.*

verse the district court's conclusion that Long was not acting as Pilot Freight's agent, we nevertheless should affirm the grant of summary judgment by reversing the district court's denial of summary judgment as to the first four elements of Spark's *prima facie* case.

■ In particular, Pilot Freight asserts that it is entitled to summary judgment because Sparks has not established that Long's harassment was sufficiently severe to be actionable under Title VII.[11] To be actionable under Title VII, the "sexual harassment" must have affected a "term, condition, or privilege" of employment within the meaning of Title VII. *See Henson*, 682 F.2d at 904. The Court in *Vinson* interpreted this as requiring proof that the sexual harassment was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Vinson*, 106 S.Ct. at 2406 (quoting *Henson*, 682 F.2d at 904). This test may be satisfied by a showing that the sexual harassment was sufficiently severe or persistent "to affect seriously

[the victim's] psychological well being." *Henson*, 682 F.2d at 904.

Applying this test, we conclude that the district court properly found that Sparks could survive a motion for summary judgment on her claim that Long's alleged conduct is actionable under Title VII as it affected a "term, condition, or privilege" of Sparks' employment. According to Sparks, Long repeatedly sexually harassed her and threatened her job—conduct which she said "frightened" and "upset" her, causing her to doubt her job security. *See Sparks*, No. C85–2941A, slip op. at 6. Accepting these allegations as true, we conclude that Long's sexual harassment of Sparks was sufficiently persistent and severe to satisfy the *Vinson* requirement that the conduct must have seriously affected the plaintiff's psychological well being.[12] Accordingly, Sparks has established a genuine issue of material fact as to whether Long's conduct affected a "term, condition, or privilege" of her employment; the district court therefore should have denied summary judgment for defendant on this issue.[13]

---

11. Sparks asserts that Pilot Freight cannot raise this claim before this court because it did not cross-appeal. This is incorrect. As a general rule, a prevailing party may, without filing a cross-appeal, defend a judgment on any ground raised below which the law and record permit that would not expand the relief it has been granted, here summary judgment on this claim. *See United States v. New York Telephone Co.*, 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977); *see also Whitley v. Albers*, 106 S.Ct. 1078, 1088 (1986). This rule obtains even though such arguments may involve an attack upon the reasoning of the court below. *Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976).

12. *See* 29 C.F.R. §§ 1604.11(a)(2) (unwelcome sexual advances constitute sexual harassment where submission to such conduct is made, explicitly or *implicitly,* a term or condition of an individual's employment) (emphasis added), 1604.11(a)(3) (unwelcome sexual advances constitute sexual harassment where they have the purpose or effect of creating an intimidating, hostile or offensive working environment).

13. Judge Hill's proposal that we require the factfinder to determine first whether harassing behavior was "ambiguously" or "patently" offen-

sive before assigning liability to the employer is unnecessary. The Supreme Court has stated that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 106 S.Ct. at 2406 (quoting *Henson*, 682 F.2d at 904). Not all harassment rises to a violation of Title VII. For an employer to be liable for sexual harassment, a factfinder must find that the harassment had been sufficiently offensive to be actionable.

Moreover, we question the usefulness of requiring a factfinder to distinguish between "ambiguously" and "patently" offensive actions considering that most complaints of sexual harassment are based on actions which, although they may be permissible in some settings, are inappropriate in the workplace. What can be a "compliment," as Judge Hill puts it, between two persons who have a social relationship can be abusive in the workplace—but that is, in many cases, the whole point of the sexual harassment claim. With access to all the evidence, and with the common sense to make credibility determinations, a factfinder should not find it difficult to distinguish between harassing actions that constitute a violation of Title VII and those "ambiguous" actions which simply may not "create an abusive working environment."

## III. SEX DISCRIMINATION

Sparks' second Title VII claim is a discriminatory treatment claim and is based on Connell's decision to fire her but not Turner—an allegedly similarly situated male employee.

### A.

■ In order to establish a *prima facie* case of discriminatory treatment a plaintiff must demonstrate facts sufficient for a reasonable jury to infer that discrimination has occurred. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see Delgado v. Lockheed-Georgia Co., A Div. of Lockheed Corp.,* 815 F.2d 641, 644 (11th Cir.1987) (same under the Age Discrimination in Employment Act (ADEA)); *Anderson v. Savage Labs, Inc.,* 675 F.2d 1221, 1223 (11th Cir.1982) (same).[14] This inference may be established by proof that the plaintiff: (1) belongs to the statutorily protected group, (2) was qualified for the job, (3) was discharged, and (4) was replaced by a person outside the protected group.[15] *Garner v. Wal-Mart Stores, Inc.,* 807 F.2d 1536, 1538 (11th Cir.1987); *see Delgado,* 815 F.2d at 644.

■ Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for firing the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.[16] Should the defendant satisfy its burden of production, the presumption raised by the plaintiff's *prima facie* case is rebutted and the plaintiff now must demonstrate, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons. *Id.* at 253, 101 S.Ct. at 1093.

Applying these principles in the instant case, the district court concluded, correctly, that plaintiff could survive summary judgment as to her *prima facie* case because (1) she is female and thus is a member of a protected group, (2) she was qualified for the position of billing clerk, (3) she was discharged, and (4) she was replaced by a person outside the protected group. The court nevertheless granted summary judgment for defendant. The court so ruled after accepting Pilot Freight's claim that it had a legitimate reason for firing Sparks because of its work rule requiring employees to call in sick, which Sparks violated on May 10th but which Turner did not violate. The district court rejected, as a matter of law, Sparks' rebuttal argument that Pilot Freight's articulated reason for firing her was not its actual reason for doing so, but rather was pretextual.

### B.

Because defendant Pilot Freight rebutted the presumption of prejudice by proffering evidence of a legitimate nondiscriminatory reason for firing Sparks, the issue on appeal from the grant of summary judgment for defendant is whether the record as a whole contains sufficient evidence

---

**14.** *Delgado* and *Anderson* are both Age Discrimination in Employment Act (ADEA) cases, 29 U.S.C. §§ 621–34. However, because Title VII and ADEA share as a common purpose the elimination of employment discrimination and because the method for proving discriminatory treatment under both acts is similar, decisions arising under the ADEA applying discriminatory treatment analysis bear on those arising under Title VII. *See Anderson v. Savage Labs, Inc.,* 675 F.2d 1221, 1224–25 (11th Cir.1982) (Title VII cases applying the "work rule" test are precedent for those arising under the ADEA).

**15.** Proof of a *prima facie* case does not require direct proof of intent to discriminate; evidence of disparate treatment from which the trier of fact may infer discrimination is sufficient. *See*

*United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714 & n. 3, 103 S.Ct. 1478, 1481 & n. 3, 75 L.Ed.2d 403 (1983); *McCollum v. Bolger,* 794 F.2d 602, 609 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987).

**16.** To meet this burden, the defendant must "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3d Cir. 1987) (en banc) (emphasis in original), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815, (1987); *see Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95.

from which the factfinder could infer that Pilot Freight was guilty of intentional discrimination.[17] *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898 (3d Cir.1987) (en banc), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In the instant case, this inquiry into whether Pilot Freight in asserting its alleged legitimate reason has satisfied its burden of establishing the absence of a genuine issue of material fact as to whether it had a discriminatory motive for firing Sparks, is subsumed under the inquiry into employer pretext. *See id.* at 896, 898.

An employee may rebut a defendant's claim that it had a legitimate reason for firing her "indirectly by showing that the employer's proffered explanation is unworthy of credence."[18] *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see Chipollini*, 814 F.2d at 898 (same under the ADEA). Where, as here, the employer's asserted justification is that the employee violated a work rule, the employee must prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated. *Harris v. Plastics Mfg. Co.*, 617 F.2d 438 (5th Cir.1980);[19] *see Delgado*, 815 F.2d at 644; *Savage Labs Inc.*, 675 F.2d at 1224. Sparks asserts that both grounds for finding pretext apply here; we need consider, and therefore do consider, only one ground.[20]

Sparks' primary basis for claiming that Connell's asserted justification is pretextual is that she complied with the work rule. Sparks does not dispute that Pilot Freight had a rule requiring employees to notify it if they would not be coming in that day. This rule, however, according to Connell's deposition testimony, was unwritten. Sparks asserts that a reasonable construction of this unwritten work rule is that it constituted a requirement that employees notify Pilot Freight that they are going to be out sick that day prior to the start of their shift. Sparks claims that the record demonstrates that she satisfied this requirement. The evidence most favorable to Sparks shows that several hours before the start of Sparks' shift, Connell's secretary, Hilda Tatum, called Sparks about a request Sparks had made earlier that day to change her hours. During that call, Sparks informed Tatum that she was sick and would not be coming to work that night. Moreover, as the district court observed, the evidence viewed for summary judgment purposes shows that Connell knew that Sparks had reported in sick.

Pilot Freight contests Sparks' claim, arguing that under its unwritten work rule an employee is required not only to notify the employer of her intention to be out sick, but also to initiate the call in which the notice is given. It is this latter requirement, Pilot Freight asserts, that Sparks violated, but Turner did not, and which provided the basis for their disparate treatment.

---

**17.** Sparks asserts that Pilot Freight did not proffer evidence of a legitimate motive because the asserted motive is not credible. Lack of credibility is grounds for rebuttal; it is not, at least in the form asserted here, the basis for a claim that the defendant has not met its burden of production. *See Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095.

**18.** The employee also may rebut the defendant's claim "directly by persuading the court that a discriminatory reason more likely motivated the employer." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

**19.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**20.** Sparks' second basis for claiming pretext is that Connell failed to enforce the work rule against Turner, a similarly situated employee who is not a member of the protected group. Although it appears that Turner did in fact call in, Sparks observes that Connell in deposition stated he did not remember how he learned that Turner would be absent or whether he actually talked to him. This evidence that Connell was not aware that Turner had called in but Sparks had not when he fired one but not the other raises the inference, Sparks asserts, that Connell's articulated reason for firing one but not the other is pretextual. *See Delgado*, 815 F.2d at 644.

We conclude that, viewing the evidence in the light most favorable to Sparks, Pilot Freight's construction of its work rule—under which Sparks was required to make a separate phone call to re-report in sick despite the fact that she had just told Tatum, Connell's secretary, that she would be out sick—could reasonably found to be implausible and unworthy of credence. The implausibility of the alleged justification is sufficient to create a genuine issue of material fact as to whether Pilot Freight's articulated reason is pretextual. *See Chipollini*, 814 F.2d at 900 (summary judgment for defendant inappropriate where there is evidence that employer's justification is implausible).

Moreover, in this case our conclusion that a genuine issue of fact exists as to whether Pilot Freight's asserted justification is pretextual is supported by the fact that there is no evidence that Pilot Freight had ever before so interpreted its rule; in addition, Connell offered no explanation as to why employees allegedly are required to initiate all telephone calls made to report in sick. Furthermore it is undisputed that Connell had never before fired an employee simply because the employee failed to initiate a phone call to report in sick. Finally, there is no evidence that Pilot Freight had ever before treated a solitary violation of this rule as grounds for termination.

Accordingly, because Sparks has raised a genuine issue of material fact as to whether Connell's articulated reason for firing her is pretextual, she has raised a genuine issue of material fact as to whether Pilot Freight had a discriminatory motive for firing her. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 717–18, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983) (Blackmun, J., concurring) (the *McDonnell Douglas/Burdine* framework requires that the plaintiff prevail if the plaintiff demonstrates that the legitimate, nondiscriminatory reason proffered by the employer is not the true reason for the employment decision). We therefore conclude that summary judgment for defendant on Sparks' claim of sex discrimination should not have been granted.[21] *See Liberty Lobby*, 106 S.Ct. at 2510.

## IV. QUID PRO QUO SEXUAL HARASSMENT

Sparks' third claim is one of *quid pro quo* sexual harassment. The essence of this claim is that Sparks suffered a tangible job detriment as a result of her reactions to Long's sexual harassment of her because Long, in order to get revenge, influenced Connell to fire her.

■ Title VII prohibits an employer from requiring sexual consideration from an employee as a *quid pro quo* for job benefits. In order to establish a *prima facie* case of *quid pro quo* sexual harassment against an employer, the employee must prove: (1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, and (4) that the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment. *Henson*, 682 F.2d at 909.[22]

The district court concluded that summary judgment was inappropriate as to the first three elements, but granted summary judgment based on the fourth element of

---

21. Nor is our conclusion that summary judgment is inappropriate altered by the fact that Sparks had not called in on May 11 to report that she *would* be returning to work. It was the district court, not Connell, who articulated this alleged work rule violation as a second reason for firing Sparks. Moreover, it appears from Connell's deposition testimony that this alleged rule was not in fact a Pilot Freight work rule but rather was Connell's own view of proper employee etiquette—a view that Connell indicates had not been explicitly stated to his employees. Finally, even if there was such a rule, Sparks did not violate it: Connell fired her several hours before she was due to come in to work, and thus before her time to report her intention to return to work had expired.

22. Where the alleged harasser is the plaintiff's supervisor, the employer is directly liable; plaintiff need not prove *respondeat superior*. *Henson*, 682 F.2d at 909; *see* 42 U.S.C. § 2000e(b); 29 C.F.R. § 1604.11(c).

Sparks' *prima facie* case. Because Sparks' *quid pro quo* sexual harassment claim is based in part on her harassment by Long, we conclude, for the reasons stated in section II of this opinion, that the district court properly found that Sparks established a genuine issue of material fact as to the first three elements of her *prima facie* case. We reverse the district court's grant of summary judgment on the fourth element.

Sparks alleges that the following evidence, drawn from the deposition testimony submitted to the district court, permits the inference that Long influenced Connell to fire her as retaliation for her reaction to his sexual harassment of her: (1) Long threatened to have Sparks fired if she did not accede to his demands, (2) Long and Connell had worked together in the Atlanta terminal and apparently were friends, (3) another female employee who had refused Long's advances stated that Long had influenced Connell to reprimand her based on fictitious problems, (4) Long and Connell allegedly discussed Sparks' termination, although whether they discussed it prior to, or shortly after her termination is unclear, and (5) Sparks was fired for pretextual reasons after having been at the Atlanta terminal less than five days. Therefore, Sparks asserts that the grant of summary judgment was improper.

Pilot Freight retorts that Sparks' evidence is insufficient to overcome Connell's statements in deposition that he made the decision to fire Sparks independently of, and without consulting, Long. The district court concluded that the only deposition evidence that could possibly undermine Connell's claim that Long did not influence him to fire Sparks was that of Pilot Freight employee Kathy Chastain, who testified that Long discussed Sparks' termination with Connell. The court found that Chastain's testimony did not refute Connell's, however, because the court construed Chastain's testimony as stating that the purported conversation between Long and Connell occurred after Sparks was fired. Concluding that there was no evidence to refute Connell's claim, the court granted summary judgment for Pilot Freight.

The district court was incorrect both in his construction of Chastain's testimony and in his decision to grant summary judgment. As Sparks observes, Chastain did not testify to having overheard a conversation between Connell and Long, as the district court said. Rather she testified that Long recited to her, on the day Sparks was fired, a conversation between himself and Connell about Sparks. While it is clear from Chastain's deposition testimony that the conversation between Long and herself occurred after Sparks was fired, Chastain's testimony does not indicate when the conversation between Long and Connell occurred. We conclude, after reviewing the deposition testimony of Chastain, that a jury could infer, based on her testimony, that the conversation between Long and Connell occurred before Sparks was fired. Because this inference is the one most favorable to Sparks, the party opposing summary judgment, it is this inference that we must adopt. *See Liberty Lobby,* 106 S.Ct. at 2513.

Once this inference is adopted, Connell's statement that he made the decision to fire Sparks without consulting Long no longer stands unrefuted. We conclude that the testimony of Chastain, when considered in light of the rest of the evidence presented by Sparks—in particular the alleged absence of a legitimate reason for firing her and Long's purported attempts to use his relationship with Connell to retaliate against other female employees—is sufficient to establish a genuine material issue of fact as to whether Long influenced Connell to fire Sparks in retaliation for Sparks' reaction to his unwelcome advances. Given that being fired certainly is a tangible detriment, we conclude that Sparks has established a genuine issue of material fact as to the fourth and final element of her *prima facie* case. Accordingly, we reverse the district court's grant of summary judgment on Sparks' claim of *quid pro quo* sexual harassment.

## V.

In conclusion, the district court's grant of summary judgment as to each of Sparks'

Title VII claims is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

HILL, Circuit Judge, concurring in part; and dissenting in part:

While I concur in the decision to remand this case to the district court, I respectfully dissent from a portion of this opinion.

I concur with those parts of the opinion addressed to sexual discrimination which results in tangible detriment to the plaintiff. Until the Supreme Court decides otherwise I will concur with the generally accepted notion that employers are liable in such situations for the actions of supervisors, even when such actions are unknown to them. *See e.g., Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982). *See also, Meritor Savings Bank, FBS v. Vinson,* 477 U.S. 57, ——, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (noting that the EEOC had described this trend in its brief as *amicus curiae,* but refusing to "issue a definitive rule on employer liability"). Given this standard for liability, the district court should not have granted summary judgment in those portions of the case directed to rectifying a tangible detriment to plaintiff Sparks.

At the same time, I dissent from that part of the majority opinion which deals with workplace environment discrimination. *Vinson* dismissed two extreme standards proposed for evaluating work environment discrimination cases: courts could neither insulate those employers who had no notice of the situation, nor hold them automatically liable. *Vinson,* 477 U.S. at ——, 106 S.Ct. at 2408. It is because I fear that today's decision dips into the second of the two extremes that I dissent from a part of it.[1]

Workplace environment discrimination deserves a special standard for two reasons. First, as the defendant in *Vinson*

argued: "in a hostile environment case the employer often will have no reason to know about, or opportunity to cure, the alleged wrongdoing." *Vinson,* 477 U.S. at ——, 106 S.Ct. at 2407. By definition employers should have more reason to know of biases displayed in tangible ways than of biases woven into the environment.

Likewise, the standard the court chooses must recognize that racial and gender discrimination differ. In both instances we find patently offensive types of conduct which cannot be justified and which the law demands be rectified. And yet in cases of gender discrimination we find a second and more subtle strain of conduct which may or may not be offensive given the relationship between the parties at the given time. For example, to a given individual, the gender-based compliment may be acceptable when placed in the context of a relationship between the parties; the same statement may be offensive when that relationship does not exist or has soured. The law stands ready to protect workers against sexually harassing behavior, but it need not and ought not intervene when neither party is offended by the actions. Thus, the standard chosen by the court must be able to measure the behavior within the contours of the situation as it existed at the time of the allegedly discriminatory behavior.

I would propose the following two-step test for analyzing hostile environment situations. First, it must be determined whether or not the allegedly discriminatory behavior was ambiguously or patently offensive. Where the conduct was patently offensive and the offending individual was plaintiff's supervisor, the inquiry may end: with or without notification of the wrong, the employer may be held liable.

However, where it is found that the supervisor's behavior was ambiguous, i.e., less than overtly offensive, a second find-

---

1. The majority opinion suggests that because plaintiff claims both work environment and quid pro quo violations of Title VII, this court need not address itself to the topic of a standard for "hostile environment" litigation. I disagree. Because plaintiff asserts two types of discrimination does not mean we measure both claims

by the laxer standard; each claim must be examined according to the standard appropriate to that contention. Thus, I find that the majority opinion adopts, without analysis, a sweeping and controversial position on hostile environment discrimination.

ing must be made as to whether the plaintiff, by some objective action at the time of the allegedly offensive conduct displayed objection to the conduct of the supervisor. These expressions of dissatisfaction may not always be through formal channels of protest within the employer's structure (although such methods would be the best display of the fact that ambiguous conduct was offensive to the employer), and thus while this test will often provide notice to the employer, it will not guarantee such notice. However, the objective demonstration of displeasure will clarify and define the otherwise ambiguous actions of the supervisor, and will prevent any reinterpretation of the situation via hindsight.

I would remand the case for a trial and determinations according to the standards set forth in this concurring and dissenting opinion.