[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15261
Non-Argument Calendar

_____

D.C. Docket No. 0:14-cv-61556-BB


STACIE FEISE,

                                                    Plaintiff - Appellant,

versus

NORTH BROWARD HOSPITAL DISTRICT,
d.b.a. Broward Health,

                                                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 24, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

        Plaintiff Stacie Feise appeals the district court's grant of summary judgment

to Defendant North Broward Hospital District, d/b/a Broward Health ("Broward

Health") on her claim that Broward Health unlawfully terminated her in retaliation for taking leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. On appeal, Feise argues that the district court improperly determined that: (1) her proffered comparators were not sufficiently similar to her, and (2) she failed to produce circumstantial evidence sufficient to permit a reasonable jury to find that Broward Health's proffered reason for terminating her was pretextual. After careful review, we affirm the district court's judgment. [1]

## I.    BACKGROUND

Feise began working as a registered nurse in the pediatrics department at Broward Health in 2010 after completing nursing school. During her tenure at Broward Health, Feise had a series of medical issues that forced her to take time off. In 2011, Feise missed work for a period of time due to a sinus surgery. In 2012, she took FMLA leave for eight days due to severe asthmatic bronchitis. In April 2013, she took three weeks of FMLA leave after her asthmatic bronchitis worsened—nine days of which she spent in the hospital. In August 2013, she was again hospitalized, taking two weeks of FMLA leave.

In August 2013, Feise's supervisor relocated and was replaced by Caren Bock. On August 28, 2013—amid Feise's FMLA leave—Bock sent an email to another Broward Health employee indicating that additional staffing was needed

---

[1] Feise's Motion for Leave to File Reply Brief Out of Time is GRANTED.

because "Stacy Feise (Night ED RN) is out on DL as she was recently hospitalized without a date of return and the night staff is overtime x 2 (12's) at the minimum each week." First Bock E-Mail, Doc. 98-2 at 3.[2] Bock was aware that Feise was hospitalized indefinitely with pneumonia, but denied knowing that Feise had taken FMLA leave specifically. In an e-mail shortly after Feise's termination, Bock indicated to a nurse that "[w]e need to watch overtime . . . this is being looked at." Second Bock E-Mail, Doc. 98-4 at 1.

Feise returned to work on September 6. In a meeting with Bock that day, Feise advised that her doctor wanted to do additional testing, but that she would try to complete the testing on an outpatient basis so as to avoid missing work. On the evening of September 16, Feise reported for her fourth consecutive twelve hour shift, scheduled from 7:00 p.m. to 7:00 a.m., followed by a 7:30 a.m. staff meeting. Because there was no time to take a break in the middle of her shift, Feise took her break at the end, after caring for her last patient. In accordance with standard hospital practice, Feise remained on the clock after 7:00 a.m. as she took her break, clocking out of her shift only after the break was completed. According to Feise, while she was on her break she closed her eyes at the nurses' station but never fell asleep. Feise further explained that when Bock arrived to conduct the staff meeting, Bock greeted her, and she immediately looked up and responded.

---

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

3

Bock's version of events differed.  According to Bock, she personally witnessed Feise sleeping on the morning of September 17.  When Bock arrived at the nurses' station, she said "good morning" to the employees there.  While others responded, Feise did not.  Bock then approached Feise and said, "Good morning, Stacie."  Feise awoke.  After the incident, Bock consulted with human resources, who informed her that sleeping on the job is a terminable offense.  Bock also requested surveillance footage of the nurses' station, which according to Bock showed Feise sleeping intermittently for three minutes and continuously for another three minutes.

Two days after the incident, Bock called Feise and instructed her to meet with Bock and human resources the next day, noting that she saw Feise sleeping prior to the 7:30 a.m. meeting.  At the meeting, Feise met with Bock, Human Resources (HR) Specialist Maxine Trotter, and Regional HR Director Eileen O'Brien.  Feise explained that while her eyes may have been closed, she had not been sleeping.  Feise was told there would be further investigation.  Bock— consulting with Trotter —ultimately made the final decision to fire Feise.  Feise was summoned to another meeting with Bock and Trotter three days later, where Feise was shown a video of the sleeping incident and was told that she was being terminated.  Trotter was aware that Feise had taken FMLA leave.

4

Feise subsequently contacted Broward Health's employee advocacy department, where she explained that she believed she had been fired for taking FMLA leave. Feise's employee advocate, Faith-Simone Hunte, investigated the incident, interviewing a number of witnesses. Her interviews yielded varying versions of the incident. Two employees told Hunte that they did not see Feise sleeping prior to the staff meeting, with one adding that Feise "was responsive and participating before and during the meeting." Bock and one other employee told Hunte that they saw Feise sleeping, and another employee noted that while it was possible Feise dozed off, she did not think Feise was sleeping. From her investigation, Hunte concluded that she could not determine whether Feise was sleeping. Consequently, Hunte spoke with Bock and O'Brien, recommending that Feise be reinstated. They declined to reinstate Feise.

Broward Health's Employee Handbook noted that "[Broward Health] does not allow sleeping during meal periods or rest breaks." The manual does not specify the punishment for sleeping during a meal period or rest break. Nonetheless, Trotter testified that she had been involved in five or six other terminations for sleeping on the job, and Hunte noted that she was aware of one other case where an employee was terminated for sleeping on the job. Trotter further testified that, in accordance with her experience, she informed Bock that sleeping on the job was a terminable offense prior to Feise's termination. Feise has

5

not presented any counter evidence suggesting that sleeping on the job was not historically a terminable offense.

Feise had never been written up or disciplined prior to her termination. Feise also uniformly received positive performance reviews. From 2010 to 2013, her performance appraisals indicated that she consistently met or exceeded expectations. Feise's final performance appraisal prior to her termination effusively praised her work, noting that she "display[ed] a calm, compassionate, confident manner when interacting with patients and families," "interact[ed] well with physicians," and had "expanded her clinical skills." Indeed, in June 2013, three months before her termination, Feise received a promotion to the Pediatrics Emergency Department.

Feise filed suit against Broward Health, alleging that she was fired in retaliation for taking FMLA leave. Before the district court, Feise identified several putative comparators who she alleged engaged in similar misconduct but were not terminated by Broward Health. Two are relevant for this appeal. First, Feise identified a Senior Medical Technologist who was caught sleeping in a chemistry lab but was only suspended for two days. That employee provided a doctor's note indicating that she was prescribed medication to help her sleep at night and that she accidentally took the medication in the morning prior to falling asleep at work.

Second, Feise identified a comparator who engaged in misconduct that, in her view, was more severe than sleeping on the job. The employee, a medical technician, repeatedly abandoned a child patient who was supposed to be under close observation because he had threatened self harm. The medical technician had numerous previous corrective actions, for offenses including unprofessional behavior, failure to communicate when taking a break, using a personal cell phone at work, having his head down at a desk, mislabeling a specimen, leaving the work area for an extended period of time, and threatening violence. Nonetheless, Bock did not terminate him, instead referring him to an employee assistance program and recommending that he review hospital policies and undergo re-education.

The district court granted summary judgment to Broward Health on the ground that Feise failed to present evidence sufficient to show that Broward Health's stated reason for firing her—sleeping on the job—was pretextual. Feise now appeals.

## II.    STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgement de novo, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). We view the facts in the light most favorable to the nonmoving party. *See id.* We must also draw "all reasonable inferences in favor of the party opposing summary judgment." *Whatley v. CNA Ins. Cos.*, 189

F.3d 1310, 1313 (11th Cir. 1999).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Mere speculation is insufficient to create a genuine issue of material fact.  *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## III.    DISCUSSION

"When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), for evaluating Title VII discrimination claims." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (parallel citations omitted).  To prove a retaliation claim, an employee "must allege that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity."  *Id*.  "Only after the plaintiff makes this prima facie case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).  "If the defendant does so, the plaintiff must then show that the defendant's proffered

8

reason for the adverse action is pretextual." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

In establishing pretext, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Consequently, absent direct evidence of retaliation, a plaintiff may demonstrate pretext either by identifying a similarly situated comparator who was treated less harshly or by presenting circumstantial evidence sufficient for a reasonable jury to find that the employer's proffered reason for terminating the plaintiff was mere pretext for discrimination.

The district court determined that although Feise made out a prima facie case of retaliation, Broward Health produced a legitimate reason for Feise's termination—sleeping on the job. The district court then found that Feise failed to adduce enough evidence to show that Broward Health's putative reason for firing her was pretextual. Feise raises two points of error on appeal. First, she argues that the district court erred in conducting its comparator analysis, improperly focusing on minute differences between Feise and her proffered comparators. Second, Feise argues that she adduced enough circumstantial evidence to permit a reasonable jury to find that Broward Health's reason for firing her was pretextual. In response, Broward Health disputes Feise's points of error and also argues that

9

the district court erred in initially concluding that Feise made out a prima facie retaliation case.

For purposes of this appeal, we assume that Feise has made out a prima facie retaliation case. It is undisputed that Broward Health produced a legitimate reason for Feise's termination, sleeping on the job. The question, then, is whether Feise has put forward sufficient evidence indicating that Broward Health's putative reason was mere pretext for its true intention to fire Feise for having taken FMLA leave. We conclude that she has not.

## A.    Comparator Analysis

Feise argues that the district court overstated the differences between her and her proffered comparators in concluding that the comparators were not similarly situated to her. We disagree. "A comparator is an employee similarly situated to the plaintiff in all relevant respects." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (alterations and internal quotation marks omitted). "The quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (alterations and internal quotation marks omitted). "Misconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." *Id.*

10

The district court properly found that Feise was not "nearly identical" to the comparators she identified. First, Feise does not argue that she is similarly situated to the medical technician who abandoned his post supervising an at-risk child. Instead, Feise asserts that the medical technician is an appropriate comparator because he was not fired even though his misconduct was objectively more serious than Feise's. But this is precisely the kind of analysis in which we are not permitted to engage. "On-the-ground determinations of the severity of different types of workplace misconduct and how best to deal with them are exactly the sort of judgments about which we defer to employers." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1341 (11th Cir. 2015). We have repeatedly noted that "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Consequently, the appropriate question is not whether the technician's "alleged violations were *worse* than [Feise's]," but instead whether the technician's violations "were *sufficiently similar*" to Feise's. *Flowers*, 803 F.3d at 1341. Because Feise does not argue that the technician's actions were "nearly identical" to hers, the technician is not an appropriate comparator.[3]

---

[3] Feise notes that in *Flowers*, we engaged in a discussion of the relative severity of the plaintiff's and the putative comparators' alleged misconduct. But there, we used differences in the severity of the misconduct to explain why the individuals the plaintiff identified *were not* suitable comparators, even if their misconduct was similar in kind to the plaintiff's. *Flowers*, 803 F.3d at 1340-41.

Second, with regard to the putative comparator who was sleeping on the job, the district court properly concluded that two key facts distinguished her situation from Feise's: (1) the putative comparator was a Senior Medical Technologist in the Laboratory Department, not a nurse, and (2) unlike Feise, who never admitted to sleeping, the technologist provided documentation from her doctor indicating that she had been prescribed medicine to assist her in sleeping at night, and that she had accidentally taken the medicine prior to her shift, causing her to fall asleep. Feise argues that these were improper considerations, but we cannot agree.

While differences in official duties "are not, in and of themselves, dispositive as to whether the two individuals may be compared for purposes of evaluating a [retaliation] claim," misconduct that "might be tolerated or treated with progressive discipline" in one position need not "be similarly accepted" in other positions. *Rioux*, 520 F.3d at 1281. Here, the district court reasonably concluded that there are significant differences between a nurse falling asleep in a public area and a technologist falling asleep in a chemistry lab. Nurses—unlike technologists—have a responsibility to respond with immediacy to patient needs. Moreover, a nurse sleeping in a public area could undermine the public's confidence in the hospital, which has an interest in putting forth a professional image. We find that the difference in responsibilities between Feise and the technologist—combined with the fact that the technologist, unlike Feise, provided

a medically documented reason for her misconduct[4]—render the technologist an unsuitable comparator.

## B.    Other Evidence of Pretext

Nor has Feise adduced other circumstantial evidence sufficient for a reasonable jury to find that Broward Health's proffered reason for terminating her was pretextual.  To show pretext in the absence of a comparator, a plaintiff must adduce evidence not only that the employer's proffered reason is false, but also that unlawful retaliation was the employer's true motive.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514-15 (1993).  To do so, Feise could have shown either "that [Broward Health's] proffered reason is unworthy of credence or . . . that [retaliation] more than likely motivated [Broward Health] to fire [her]." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  Here, the evidence in the record would not permit a reasonable jury to find that Broward Health's reason for terminating Feise—sleeping on the job—was unworthy of credence, or that retaliation more likely than not motivated Broward Health to terminate her.

Initially, Feise argues that the district court failed to consider evidence suggesting that she did not actually fall asleep on the day in question, asserting that

---

[4] Feise argues that the technologist is a suitable comparator because Feise too suffered from medical issues prior to her termination.  But there is no evidence in the record suggesting that Feise informed anyone at Broward Health that her medical issues were the reason she was sleeping on the day in question.  To the contrary, she denied having been asleep.

the court improperly focused on whether Bock genuinely believed Feise was sleeping and whether Bock terminated Feise for that reason. According to Feise, our decision in *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir. 1987), indicates that where an employer claims to have terminated an employee based on direct knowledge of misconduct, the operative question with regard to pretext is whether the misconduct actually occurred. We disagree.

In *Sparks*, an employer claimed that it terminated the plaintiff because the plaintiff violated an unwritten company policy requiring employees to inform the employer if they are going to be absent from work. 830 F.2d at 1563-64. All parties agreed that during a phone call initiated by the employer for a separate purpose, the plaintiff had informed the employer she would be absent on the day in question. *Id.* The defendant nonetheless asserted that the unwritten rule required employees to initiate the communication in which they inform the employer of their absence. Though we noted that the plaintiff could prove pretext by "showing . . . that she did not violate the work rule," the question in *Sparks* was not whether the employee engaged in the specific misconduct, but whether the work rule in question actually existed. *Id.* In that case, evidence that the employee did not violate the work rule because the specific rule in question was invented *ex post*

14

*facto* by the employer was relevant to whether the employer's proffered reason for termination was worthy of credence.[5]

Here, there is no dispute that Broward Health had a rule prohibiting sleeping on the job. Feise merely quibbles that she did not violate the rule because she was not sleeping, not because no such rule exists. This case therefore fits comfortably in the line of cases indicating that "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Indeed, an employer can hardly be said to have discriminated or retaliated against an employee if it terminated the employee based on a good faith belief that she violated a rule, even if the purported violation never actually occurred.

Feise argues in the alternative that the district court improperly ignored facts suggesting that Broward Health's proffered reason for terminating her was a ruse, including: that Feise was terminated 11 days after returning from FMLA leave; that she had not been disciplined prior to the incident in question; that she had only closed her eyes for three minutes; and that Bock, at her deposition, could not

---

[5] Feise suggests that the focus ought to shift to whether the employee actually engaged in the putative misconduct where the employer relies on personal knowledge of underlying conduct. We disagree. An employer who, based on personal knowledge of a violation, terminates an employee because of the violation alone has not discriminated or retaliated against the employee, even if the employer ultimately was mistaken in its personal belief that the employee committed the violation.

identify another employee who had been fired for sleeping on the job. But with the exception of temporal proximity, consideration of each of these facts would convert the court into a "super-personnel committee," *Chapman*, 229 F.3d at 1030, that impermissibly decides for employers what conduct is sufficient to warrant termination. And temporal proximity alone generally is insufficient to establish pretext. *Hurlburt*, 439 F.3d at 1298. Absent evidence of discrimination or retaliation, our employment discrimination statutes do not interfere with an employer's ability to manage its personnel, "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Elrod*, 939 F.2d at 1470. Thus it matters not that Feise's termination might have been unexpected or unfair; FMLA simply does not afford relief in the absence of evidence of retaliation.

Two other issues are worthy of discussion. First, Feise contends that a purported contradiction in Bock's testimony calls Bock's credibility into question such that a jury would be permitted to find all of her testimony unworthy of credence. In Feise's view, "the record demonstrated that Bock did have knowledge that Feise had taken FMLA leave, yet Bock's declaration in support of Broward Health's motion for summary judgment stated that she had no knowledge that Feise had ever requested, taken, or been approved for FMLA leave at any time." Appellant's Br. at 22-23. This is a factual non-starter. Feise points to no

16

evidence on the record—and we are unable to locate any—indicating that Bock knew Feise had taken FMLA leave specifically.  The purported contradiction is non-existent.

Second, the record contains two e-mails from Bock concerning employee overtime that Feise argues constitute evidence that retaliation motivated her termination.  The first email, from Bock to another employee while Feise was on FMLA leave, explains that there is a need for additional staffing because "Feise (Night ED RN) is out on DL as she was recently hospitalized without a date of return and the night staff is overtime x 2 (12's) at the minimum each week."  First Bock E-Mail, Doc. 98-2 at 3.  The second email, sent by Bock to a nurse shortly after Feise's termination, notes that "[w]e need to watch overtime . . . this is being looked at."  Second Bock E-Mail, Doc. 98-4 at 1.  Even taken together, these e-mails do not suggest retaliation.  The first e-mail merely reflects that the hospital had to take steps to provide additional staffing in Feise's absence—a fact likely to be present whenever an employee takes FMLA leave.  And the second e-mail is nothing more than a general expression that excessive overtime is a concern, with no reference to Feise or FMLA leave.  The evidence in the record does not permit the inferential leap required to conclude that Bock's generalized concern about overtime led her to terminate Feise.

17

Because Feise is unable to point to a suitable comparator and has failed to produce other evidence that would allow a reasonable jury to find that Broward Health's proffered reason for terminating her was pretextual, the district court did not err in granting summary judgment for Broward Health.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**