Robert S. TURNER, Plaintiff,

v.

William P. BARR, Defendant.

Civ. A. No. 91–3101 (CRR).

United States District Court,
District of Columbia.

Nov. 25, 1992.

Alan G. Warner, Washington, D.C., and Jeanne Sandy, Gaithersburg, Md., for plaintiff.

Jay B. Stephens, U.S. Atty., District of Columbia, Asst. U.S. Attys., John D. Bates and Charles F. Flynn, of counsel, Janice M. Rodgers, Associate Legal Counsel, U.S. Marshal's Service, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

This is a disparate treatment case against the U.S. Marshal's Service where the plaintiff, a 47 year old white male of the Jewish faith and religion, claims that his employer violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16(a), in that the terms and conditions of his employment as a Deputy U.S. Marshal at the D.C. Superior Court violated his rights to a work environment free from religious, ethnic, or racial discrimination.

Trial was held in this case on November 23 and 24, 1992. The Court has carefully considered the submissions of the parties, the testimony of witnesses, the exhibits, the arguments of counsel, the applicable law, and the entire record herein, and concludes that the Plaintiff has proved that he was subjected to a hostile work environment in violation of Title VII, and that a disciplinary action taken against him was the product of that hostile working environment. Consequently, the Court shall enter judgment on the Complaint for the Plaintiff. The following shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The Plaintiff, Robert S. Turner, is a 47 year old white male of the Jewish faith who began employment in the federal government in 1974 with the Immigration and Naturalization Service. He subsequently moved to the Department of Justice Office of Special Investigations in 1983 as a GS–12 Special Investigator. In 1988, he became an Inspector in the Witness Security Division at the Washington Metro Office of the United States Marshals Service. In April 1989, the Plaintiff transferred to the District of Columbia Superior Court District of the Marshals Service, where he became a GS–12 Deputy U.S. Marshal. Soon thereafter, the Plaintiff was assigned to the Court Support Unit.

The Plaintiff complains that, following his assignment, he was only given limited access to the full range of duties and opportunities of a Deputy U.S. Marshal, such as the service and execution of warrants, conducting evictions, prisoner transfers, etc. He testified believably that the experience he sought, and was denied access to, would benefit him in his career as a Deputy U.S. Marshal and would enhance his ability to advance through higher ranks of pay and responsibility in the Marshals Service, the oldest law enforcement agency in the Nation.

In addition, Plaintiff was denied the opportunity to work overtime in an amount comparable to many of the African–American Deputies in his office. However, he did get some overtime hours. *See* Pl.Ex. 14 (setting forth the overtime hours of other Deputies of various grades).

Further, the Plaintiff applied for special training in languages and law enforcement in an effort to enhance and strengthen his abilities and employment opportunity. Test. of Robert S. Turner, at 5. The Plaintiff was told to request the training in writing, which he did. The Plaintiff never received a response to his requests. Similarly, his request to participate in the Deputy Development Program, a training program designed to enhance the abilities of Deputies, was met with resistance and, although finally agreed to, was not fully implemented.

The Court does not believe or subscribe to the government's contention at trial that the Plaintiff was denied access to the normal rotation in assignments or overtime duty by virtue of his grade, namely, a GS–12. The Court's conclusion is buttressed and supported by the evidence that it was his race and religion that caused him to suffer in these respects. *See* Pl.Ex. 14.

The ultimate incident giving rise to this action was the discipline or seven day suspension of the Plaintiff for the escape of a now-deceased prisoner, Kenneth Ashby, on January 16, 1990. The prisoner was allegedly in the custody of the Plaintiff when he escaped behind Courtroom 202 in the District of Columbia Superior Court Building. As indicated, an investigation conducted some eight months later and after the prisoner had died was the alleged basis for which the Plaintiff was suspended from duty for seven days. No one else was disciplined for the incident although others in this office were involved at least in part.

The Plaintiff filed a complaint on May 16, 1991, within thirty days of his suspension, with the Equal Employment Opportunity Commission, claiming that the suspension was discriminatory and an example of the ongoing harassment he faced because of his religion and white race.

The Plaintiff subsequently on July 23, 1991, filed another EEO Complaint, claim-

ing that he was the victim of retaliation because of the filing of the original complaint. After the filing of this second complaint, the Plaintiff began to receive some of the perquisites of his position. He was given a government car and more varied work assignments. Even though the retaliation claim was withdrawn at trial, the fact that the Plaintiff did not receive all the benefits and employment opportunities of his office, and that others both above and below his grade were given a wider range of opportunities for advancement as well as overtime, is just another indication of the hostile work environment the Plaintiff has endured.

III. THE HOSTILE WORK ENVIRONMENT ASSERTED HERE IS ACTIONABLE UNDER TITLE VII BECAUSE ALL AMERICANS HAVE THE RIGHT TO WORK IN AN ATMOSPHERE AND UNDER TERMS OR CONDITIONS IN EMPLOYMENT THAT ARE FREE OF DISCRIMINATION ON ACCOUNT OF RACE, COLOR, SEX OR RELIGION

The cause of action for hostile work environment was first recognized by the Fifth Circuit in *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). This same rule was upheld by the Supreme Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), *affirming Vinson v. Taylor*, 753 F.2d 141 (D.C.Cir.1985). Other cases have followed that say Title VII provides employees with "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Kishaba v. Hilton Hotels Corp.*, 737 F.Supp. 549, 555 (D.Haw.1990), *aff'd*, 936 F.2d 578 (9th Cir.1991).

Moreover, the Eleventh Circuit has held in *Walker v. Ford Motor Co.*, 684 F.2d 1355 (11th Cir.1982), that an employer violates Title VII "simply by creating or condoning an environment at the workplace which significantly and adversely affects (the psychological well-being) of an employee because of his race or ethnicity, regardless of any other tangible job detriment to the employee." *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir.1982); *accord Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1561 (11th Cir.1987).

The D.C. Circuit has recognized the concept of a "hostile work environment" in the context of sexual harassment cases. In *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir. 1981), the D.C. Circuit ruled that the disparate treatment forbidden by Title VII extended to sexual harassment in the workplace. *Id.* at 942–43. Harassment in the workplace poisons that environment. The Court went on to suggest that similar harassment based on race or ethnicity was similarly illegal. *Id.* at 945. *See also Vinson v. Taylor*, 753 F.2d 141 (D.C.Cir.1985), *aff'd*, *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

Further, the Plaintiff need not prove that the alleged harassment involved instances of conduct related in time or date. All that needs to be established is that the alleged conduct be unreasonably abusive or offensive in the workplace environment or adversely affected the reasonable employee's ability to function in his or her job. *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir.1988), *cert. denied*, 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989). Also, where the harasser is the employer or one of its agents, the employer is directly, rather than indirectly, liable for the harassment. *Sparks*, 830 F.2d at 1588. In this situation the Court need not reach the doctrine of respondeat superior requiring notice of the harassment which is the case at bar. In any event, the Court holds that the Defendant is liable to the Plaintiff under either theory here.

By application of the above principles of well-established law to this case it is clear that the Plaintiff was a credible witness on his own behalf and presented more that a preponderance of the evidence to sustain his burden of proof as to each of the elements of his claim, namely, that he belonged to a protected group on account of his race and religion, that he was subjected to unwelcome racial and religious

harassment, that the harassment was based on Plaintiff's race and religion, and that the harassment altered and adversely affected the conditions of his employment and created a hostile work environment.

The following claims of harassment here are essentially undisputed and some, but not necessarily all, are outlined below. The Court will not name individual supervisors or employees responsible for the conduct complained of herein, out of a desire to protect them from possible harassment or injury to their careers. The record is clear, however, as to what they said, what they did, and what they did not do in connection with the relevant facts of this case.

(1) The Plaintiff was required to suffer reference to the Holocaust by one of the supervisory Deputies. The Deputy related a joke about the Holocaust. The Deputy stated that the cost of Germany's reconstruction after World War II was high because of its high gas bill during the War.

(2) When the Plaintiff was assigned to collect for a charity drive, he was subjected to comments about the appropriate nature of the assignment, because Jews were supposedly skilled in dealing with money.

(3) On another occasion, when the Plaintiff was assisting in the execution of a writ at a jeweler's store, the Plaintiff was told that he should have been running the store. The clear and indisputable thrust of the comment was that being a jeweler was something for Jews.

(4) The Plaintiff was also subjected to harassment because of his race. In the original squad room, the white Deputies had desks at the back of the office, and the African–American Deputies referred to the section as Georgetown. When the Plaintiff was sitting at another desk, he was instructed by one of the African–American Deputies to "get back to Georgetown."

(5) In the course of conversations, white Deputies were referred to as "white asses," and "white boys." Further, the Plaintiff was told by an African–American Deputy that the Plaintiff should get his "white ass out of the office" because "this is a black office, for blacks, supervised by blacks."

(6) The Plaintiff was also subject to personal abuse in the office. A poster was put up anonymously with the Plaintiff's photograph superimposed next to a set of keys and the word "Turnkey." Pl.'s Ex. 3. The nickname caught on and the Plaintiff was constantly referred to by that name. He even received memos addressed in handwriting by this name. *See, e.g.,* Pl.'s Ex. 30, Pl.'s Ex. 31. Although the nickname does not explicitly refer to the Plaintiff's religion or race, it does serve as an example of the abuse to which the Plaintiff was subject. When the Plaintiff complained to the management staff, he was rebuffed.

(7) Other personal abuse occurred. On one occasion, a phone call relating to an injury of Plaintiff's son was not given him until the end of the day. He was in a courtroom when the call came in and he could easily have been notified of this family emergency but he was not given the message until the end of the workday. This incident, and the others based on his race and religion mentioned above, have affected the Plaintiff's psychological well-being and impaired his relationship with his family. Further, it demonstrates and the Court so finds that the Plaintiff was and has been subject to a hostile work environment by virtue of his race and religion.

(8) In addition to the foregoing and of importance here is the manner of the investigation into the escape of the now-deceased prisoner Kenneth Ashby. While the Court need not rule explicitly on the accuracy of the finding that the Plaintiff was responsible for the prisoner's escape which resulted in his seven day suspension from duty on May 6, 1991 through May 12, 1991, it is more probable than not that the investigation and decision to discipline the Plaintiff were not made in an environment free from any and all discriminatory animus on account of Plaintiff's race and religion. Moreover, the evidence suggests that the investigation and report upon which the decision to discipline the Plaintiff was made leave much to be desired. First, in spite of the serious nature of the incident, the Plaintiff was not interviewed until about

ten months after the incident. Furthermore, he was given no opportunity to review what had happened before being interviewed. Also, the final report was full of typographical errors and demonstrates a lack of regard for detail and precision. The Investigator testified that he did not even view the courtroom from which the prisoner was said to have made his escape. He also stated that he did not investigate a number of other relevant matters as well. *See* Test. of Darryl Kelly, 6–7, 8–9.

The decision to discipline the Plaintiff was based solely on this report. It is deemed significant that another individual (an African American) received a "letter of instruction" after the investigation. The letter is not a disciplinary action and nothing appears in this individual's record. The Defendant has failed to explain why this individual was only "cautioned" about his alleged role in the escape of Kenneth Ashby from Judge Dixon's courtroom.

Furthermore, the Plaintiff has pointed out that employees involved and allegedly responsible for two other escapes since the Ashby incident have not been disciplined at all. This is undisputed on this record. And, significant here is the fact that these other employees involved in these escapes are African–American. Thus, the Court concludes that the Plaintiff was "singled out" for discipline, at least implicitly as a result of the repressive working atmosphere, based on his race and religion.

The incidents listed above clearly demonstrate that the conduct of the Plaintiff's supervisors and fellow employees was "sufficiently · pervasive to amount to harassment and create[d] a hostile or offensive work environment...." *Broderick v. Ruder*, 685 F.Supp. 1269, 1277 (D.D.C. 1988). The "totality of the circumstances" indicates that the Plaintiff was subject to harassment on the basis of his race and religion and has proven his case based on Title VII. *See id.* Both the frequency of the events and their severity justify a finding of a hostile work environment. *Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir.1989). The Defendant has failed to rebut the Plaintiff's claims of a hostile work environment or to justify any of the harassment to which the Plaintiff had to endure.

## IV. THE REMEDY

■ Accordingly, the Court must now consider the question of the appropriate remedy in this case. Upon careful consideration, the Court concludes that the Plaintiff's complained-of reprimand shall be expunged from his record, and he shall be provided full pay and benefits for the period during which he was suspended. In addition, the Defendant, its agents, servants, and employees, shall be and hereby are directed to hereafter refrain from any racial, religious, ethnic, or other remarks or slurs contrary to their fellow employees' religious beliefs.

If the Plaintiff hereafter suffers the same hostile work environment he has proved to exist in this case, he may apply to this Court for further remedial relief, but this Court believes that the Plaintiff is not a professional litigator or troublemaker and that he will live up to his duties and responsibilities as a Deputy U.S. Marshal without the necessity of further intervention by the Court.

Costs and attorney fees shall be awarded the Plaintiff as the prevailing party pursuant to 42 U.S.C. § 2000e–5(k). Plaintiff shall submit the same to the Court by way of separate Motion together with supporting affidavits and documentation demonstrating the amount and basis for costs and attorney fees. Meanwhile, the above-mentioned case is dismissed from the dockets of this Court with jurisdiction retained only as to the question of costs and attorney fees and further remedial relief, if necessary.

## V. CONCLUSION

For the reasons expressed herein, the Court finds that the Plaintiff has proved his case under Title VII. Plaintiff demonstrated that he was subject to harassment based on his race and religion. Further, he showed that this harassment was of a continuous nature, ignored by management personnel, and severe enough as to constitute a hostile work environment. This

harassment constitutes disparate treatment and is in violation of Title VII. Accordingly, the Court shall enter judgment for the Plaintiff and shall enter an Order of even date herewith consistent with the foregoing Opinion.

### ORDER

Upon consideration of the claims of the parties at the November 23–24, 1992, trial of the above-captioned case, the record herein, and the applicable law, and for the reasons expressed in this Court's Opinion of even date herewith, it is, by this Court, this 25th day of November, 1992,

ORDERED that the Plaintiffs' request for injunctive and monetary relief shall be, and hereby is, GRANTED; and judgment in the above-captioned case shall be, and hereby is, entered for the PLAINTIFF; and it is

FURTHER ORDERED that the Defendant shall expunge the Plaintiff's personnel record of the complained-of reprimand; and it is

FURTHER ORDERED that the Defendant shall provide the Plaintiff with full pay and benefits for the period May 6, 1991–May 12, 1991, during which the Plaintiff was suspended; and it is

FURTHER ORDERED that the Defendant, its agents, servants, and employees, shall hereafter refrain from any racial, religious, ethnic, or other remarks or slurs contrary to their fellow employees' religious beliefs; and it is

FURTHER ORDERED that the Plaintiff shall recover costs and reasonable attorney fees and shall submit the same to the Court by way of separate Motion together with supporting affidavits and documentation; and it is

FURTHER ORDERED that the above-mentioned case shall be, and hereby is, DISMISSED from the dockets of this Court with jurisdiction retained only as to the question of costs and attorney fees and further remedial relief, if necessary.