DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHERELLDA BRANCH-McKENZIE,**
Appellant,

v.

**BROWARD COUNTY SCHOOL BOARD,**
Appellee.

No. 4D18-379

[September 12, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE 14-18216 (13).

Melissa C. Mihok of CPLS, P.A., Orlando, for appellant.

Debra Potter Klauber and Kenneth J. Miller of Haliczer, Pettis & Schwamm, P.A., Fort Lauderdale, for appellee.

CONNER, J.

Cherellda Branch-McKenzie ("the Employee") appeals the final judgment issued after the trial court granted summary judgment in favor of the School Board of Broward County ("the School Board"), as to all five counts of the Employee's complaint. We affirm the summary judgment as to four of the counts without discussion, but reverse as to the count alleging a hostile work environment sexual harassment claim. We determine the trial court erred in concluding that there was no dispute of material fact and as a matter of law the alleged behavior was not pervasive enough to support a hostile work environment sexual harassment claim. We remand for further proceedings as to that claim.

*Background*

The Employee filed a five-count complaint against the School Board, one of which alleged sexual harassment. The complaint alleged facts involving the behavior of the principal ("the Principal") of a school where the Employee was a guidance counselor. More specifically, the complaint alleged the following verbal statements and physical actions by the Principal:

*Verbal Statements* (to the Employee)

"Girl, you look good, I sure would like to see what that's like. I know I can have THAT! . . . I'm serious, I need to try THAT!"

Could he "get that."

"You have me curious"; "we need to go out"; and "you scared of me, I would have you whooped."

Called the Employee on the phone multiple times to ask what she was wearing. Also asked her to send "a picture of herself without her face and to engage in video chats with him."

Asked if he could "get a hug, and not a friendly hug"; "I bet [your husband] don't make you feel that way [give you chills]"; "let me get that right there"; said she was "too cute"; an "enigma"; and he was "emotionally attached" to the Employee.

He said he wanted to ask the Employee to stay late, but that he had a previous sexual harassment claim against him based on that same conduct, winked at the Employee, and said "there I go, now I'm winking at you."

He told her "you don't come to see me anymore," and when the Employee said she was busy, he said "no you're not, you need to come see me."

He told the Employee to have lunch with him, and when she tried to make excuses not to, he said he wanted to "mend their relationship," that the Employee "don't talk to me nor do you come to see me," and that she made him "humble."

He told a co-worker that he was "going to find my girl," referring to the Employee.

*Verbal and Physical Actions*

The Principal touched the Employee "on multiple occasions on her buttocks," and on one occasion stated, "oh, I'm sorry, but it felt good!"

The Principal placed his finger(s) on the Employee's lips if he thought she was talking too loud.

The Principal touched the Employee on the neck and said "come on, let me kiss you right there." When the Employee said "no," he said next time he would not ask, he would just do it, and that she made him "lose his swagger" by having to ask.

The Principal touched the Employee's neck and said "let me get that." The Principal made the same statement again another time, and when the Employee said "no," the Principal touched her back and hair, and told a co-worker who saw the exchange that the Employee was "like a mango . . . you can't have just one."

The School Board moved for summary judgment as to the sexual harassment claim, arguing that, even assuming all of the facts as alleged by the Employee as true, the actions described were not sufficiently pervasive enough to support a sexual harassment claim. Various deposition transcripts were submitted by both sides to support and oppose the motion.

In her deposition, the Employee stated that the Principal became the principal of the school where she worked at the beginning of the 2011-2012 school year. As for the allegations in the complaint, the Employee stated that the verbal and physical actions started when the Principal first came to the school in August 2011. The Employee's deposition testimony mirrored the factual allegations in the complaint.

The Employee stated that she first reported the harassment to the School Board's Equal Employment Opportunity office ("EEO") in September 2012. She stated that she tried to tell the Principal to stop, but that he would "blow it off," telling her "that he was going to humble [her] and in his country women bough [sic] down." The Employee stated that she never had a conversation with the Principal where he acknowledged that he knew of her filing an employee complaint against him, but that someone else, who she could not remember, told her that he made such an acknowledgment. She stated, multiple times, that "after [the Principal] found out [she] reported [the behavior], he still continued to do it." However, when she was specifically asked whether the Principal did anything inappropriate after she filed her complaint with the EEO, she stated that she was not sure, and that he stopped at some point, but only because she "avoided him."

Another employee, who worked at the school during the time period alleged in the Employee's EEO complaint, was deposed. She stated that she witnessed the Principal act inappropriately towards the Employee. She stated that the first time she made such an observation was when she saw the Principal approach the Employee and "made reference to her neck, saying next time, he's not going to ask for a kiss, she's [sic] just going to take it," and made reference "about her neck tasting like a mango or something like that."

The other employee also said that the Principal: would refer to the Employee as "his boo"; said he was going to be sent back on administrative duty (like he was after the previous sexual harassment claim) if he did not stop "messing with" the Employee; and accidentally touched the Employee's behind and said it was a mistake "but a good mistake." She stated that the Principal had also been inappropriate towards her as well. The other employee also said that the Employee told her never to leave the Employee alone with the Principal, and she made an effort not to. An ESE teacher at the school also gave a deposition, and said that the Employee stopped coming to a staff meeting that she usually attended, because the Employee "said she didn't want to see that man, she didn't want to be near that man, she didn't want to be in the same room, and she was not coming." A bookkeeper for the school during the relevant time stated in deposition that the Employee told her that the Principal "was feeling on her arms and she didn't like it." Also, that when the Employee stated she was going to report the Principal to the School Board, but had trepidations because of the Principal's family, the bookkeeper prayed with the Employee, "for everything to come out."

In the Principal's deposition, he admitted that he had previously been accused of, and subject to an investigation for, sexual harassment, and that the result of that investigation was a finding of probable cause to support the allegations and he was suspended for ten days. He denied all of the allegations the Employee made against him, and said that she even volunteered to be on-site with him for summer school, and a person "wouldn't ask to do that with a person that makes you feel uncomfortable, or in this case, she alleges is harassing you."

At the hearing on its motion for summary judgment, for purposes of the motion, the School Board agreed with all of the allegations made by the Employee. Consistent with the written motion, the School Board argued that the Employee's sexual harassment claim should fail because the actions, even as alleged, were not pervasive enough to support such a claim. The Employee responded, arguing that the actions were pervasive,

as she stopped going to staff meetings and asked for and received a transfer from the school.

The trial court granted summary judgment in favor of the School Board after finding that the Employee's testimony established that there were no further incidents of harassment after the Employee filed her EEO complaint in September 2012, and so as a matter of law, the "claims made by the [Employee] . . . are not the type that are sufficiently pervasive so as to constitute a hostile work environment," and that although the Employee may have been subjectively offended, it was not enough to meet the standard for a sexual harassment claim. Subsequently, the Employee gave notice of appeal.

*Appellate Analysis*

"The standard of review of an order granting summary judgment is de novo." *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. 4th DCA 2007) (quoting *Biggins v. Fantasma Prods., Inc. of Fla.*, 943 So. 2d 952, 955 (Fla. 4th DCA 2006)).

Florida Rule of Civil Procedure 1.510 provides that summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). However, "[a] judgment should not be rendered in such proceedings unless the facts are so crystallized that nothing remains but questions of law." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003) (quoting *Shaffran v. Holness*, 93 So. 2d 94, 97-98 (Fla. 1957)). As such, the School Board agreed to the facts as alleged by the Employee, for purposes of supporting and reviewing the summary judgment entered by the trial court.

"Sexual harassment is a form of sex discrimination prohibited by the Florida Civil Rights Act,[1] so that an employee may assert a claim for sexual harassment under section 760.10, Florida Statutes (2003)." *Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 293 (Fla. 4th DCA 2006). There are two types of sexual harassment cases: (1) *quid pro quo*, which are "based on threats which are carried out" or fulfilled, and (2) hostile environment, which are based on "bothersome attentions or sexual

---

[1] "The Florida Civil Rights Act is patterned after Title VII [of the Civil Rights Act of 1964], and therefore federal case law regarding Title VII is applicable." *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002).

remarks that are sufficiently severe or pervasive to create a hostile work environment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). In the trial court below, the Employee did not allege or pursue a *quid pro quo* claim.

The elements of a hostile work environment sexual harassment claim are:

> (1) that [the plaintiff] is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable.

*Blizzard v. Appliance Direct, Inc.*, 16 So. 3d 922, 927 (Fla. 5th DCA 2009). However, since the Employee's claim alleges sexual harassment by "a direct supervisor, the employee does not have to prove the fifth element." *Grogan v. Heritage NH, LLC*, 126 So. 3d 262, 264 (Fla. 3d DCA 2010). Additionally, in this case there does not appear to be any contention, in terms of summary judgment, as to the first, second, and third elements. Therefore the issue in this case is whether the Principal's conduct was pervasive enough to create a hostile environment.

In order to determine whether offensive conduct is pervasive enough, courts look to four factors:

> 1) the frequency of the conduct; 2) the severity of the conduct; 3) whether the conduct was physically threatening or humiliating; and 4) whether the conduct unreasonably interfered with the employee's job performance.

*Maldonado*, 939 So. 2d at 294. "An analysis of the severity factors includes a subjective and objective component, in that the employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and the subjective perception must be objectively reasonable." *Id.* The objective component uses a reasonable person standard, taking into account the circumstances of the case. *Id.* at 294-95. It is clear that the Employee subjectively considered the sexual harassment severe and pervasive enough, but a look at the factors is necessary for the objective standard analysis.

6

*Frequency of the Conduct*

"[S]tatements and conduct must be of a sexual or gender-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). To analyze this factor, we focus on allegations as to instances of verbal and physical conduct alleged in the complaint to have occurred over a two-year period. However, it must be noted that two of the verbal allegations and three of the physical allegations were alleged to have happened on "multiple occasions."

Considering the frequency of the conduct, and whether the allegations were sufficient to survive a motion for summary judgment, it is helpful to look to the number of allegations in a certain time period that other courts have found to be sufficient or insufficient as a matter of law. For example, courts have found the following facts *insufficient* as a matter of law: four comments over a 2.5 year period, *Maldonado*, 939 So. 2d at 295; five incidents over an eleven month period, *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999); "five separate incidents . . . over a span of approximately sixteen months," *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997); and three encounters over a two-year period, *Galdamez v. DHL Air Exp. USA*, 578 Fed. App'x. 887, 889 (11th Cir. 2014). On the other hand, courts have found *sufficient* frequency to constitute a jury question where there was: "roughly fifteen separate instances of harassment over the course of four months," *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000); and almost-daily abuse, both verbal and physical, over a three-year period, *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418-19 (11th Cir. 1999).

The facts of this case fall somewhere between the above examples. In total, the Employee alleged that there were more than twenty incidents over a two-year period. This case is similar to *Degitz v. Southern Management Services, Inc.*, 996 F. Supp. 1451 (M.D. Fla. 1998), where the plaintiff made the following allegations:

> Plaintiff claims that Mr. Copley would ask Plaintiff to "run away with him," state that "he could not concentrate with Plaintiff around," that he "would like to see Plaintiff in a bikini," and that Plaintiff "looked good enough to eat." In addition, Plaintiff contends that Mr. Copley would say to her, "would the little girl like a lolly pop?" Plaintiff contends that

7

> many more of the same, or similar, remarks were made throughout her employment.
>
> In addition, Plaintiff describes specific acts which she alleges were extremely oppressive to her. First, Plaintiff alleges that on or about July 31, 1995, Mr. Copley gave Plaintiff a first aid kit, in which, Mr. Copley concealed a condom. Plaintiff's twelve (12) year old daughter was playing with the kit and discovered the condom. Also, Plaintiff maintains that, in September, 1995, while leaving a company cookout, Mr. Copley followed Plaintiff to her vehicle where Mr. Copley grabbed her and tried to kiss and hug her. Furthermore, Plaintiff asserts that later that same month, Mr. Copley directed Plaintiff to meet him for lunch. Plaintiff claims that during the lunch, Mr. Copley directly and specifically asked Plaintiff to participate in a threesome sexual encounter with himself and a prostitute. Plaintiff states that she refused, but later that same day, Mr. Copley entered Plaintiff's office and placed the prostitute's business card on Plaintiff's desk.
>
> Plaintiff also asserts that on October 20, 1995, Plaintiff stayed home from work due to illness. Plaintiff states that her husband and daughter were home sick as well. According to Plaintiff, Mr. Copley called Plaintiffs' home and Plaintiffs' daughter answered the phone. Plaintiff asserts that Mr. Copley must have thought it was Plaintiff who answered the phone because Mr. Copley stated, "this is Dr. Copley, and I make house calls to make it all better." In addition, Plaintiff alleges that on numerous occasions, Mr. Copley would stand behind Plaintiff while she was at her desk and fondle her neck and back. Moreover, Plaintiff attests that she was fearful that she would lose her job if she complained to anyone. Plaintiff asserts that as a result of Mr. Copley's constant advances, she became scared, nervous, and very depressed.

*Id.* at 1456. In this case, the comments were similar, and similar remarks are alleged to have been made on a repeated basis. Additionally, while the harasser in *Degitz* attempted to kiss the plaintiff on one occasion, outside of work, here, the Employee alleged that the Principal made comments about touching her and threatening to kiss her on multiple occasions while at work. The Employee also alleged that the Principal called her personal cell phone on multiple occasions, soliciting "a picture of herself without her face," and asking her what she was wearing.

8

Therefore, we conclude the alleged facts in this case were frequent enough such that the frequency of conduct factor should have been resolved by a jury decision, rather than a summary judgment decision.

*Severity of Conduct*

"Title VII 'does not prohibit all verbal or physical harassment in the workplace,' and 'does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" *Johnson*, 234 F.3d at 509 (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80–81 (1998)). Also, "teasing, offhand comments, or isolated incidents" are not enough. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 812 (11th Cir. 2010). "Although a single act can be enough . . . generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." *King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990).

Similar to the frequency factor, there are many cases discussing what is and is not severe enough. The following are instances where courts have found the facts *insufficient* as a matter of law for severity:

> The alleged harasser told complainant that she was "very beautiful" on one occasion; alleged harasser called complainant at home on nights and weekends, and although asked her personal questions, he never "ask[ed her] for a date or ma[d]e sexually explicit remarks or innuendos"; one time when he was expecting her, the alleged harasser was not wearing a dress shirt (but an undershirt), and when the complainant came in, he unbuttoned his pants, pulled down his zipper, and started tucking in his shirt, but the complainant admitted the air conditioning was broken that day; the alleged harasser stared at the complainant twice, touched her ring and bracelet once and kept asking her to lunch; and what the court found most serious, the alleged harasser placed his hand on the complainant's knee once and touched the hem of her dress once. *Gupta*, 212 F.3d at 584-85

> "(1) [the alleged harasser] once made a remark to [the complainant] about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he 'grabbed or brushed' against the complainant]'s breasts and behind, (4) he once held her cheeks and tried to kiss her, (5) he asked [the complainant] to come to the office early so that they could be alone, and (6) he once stood in the door

of the bathroom while she was washing her hands." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

The following are instances where courts have found the facts *sufficient* to constitute a jury question:

> "[D]uring [a] seven-month period, [the alleged harasser] grabbed [the complainant] and kissed her on the cheek, popped rubber bands at her breasts, fondled her breasts 'numerous times,' patted her on her buttocks 'numerous times,' and came behind her and rubbed his body against her. At one point, [the complainant] estimated that [the alleged harasser] touched her breasts or her buttocks perhaps as often as once a week — although she later stated that it may not have been as often as once a week. She also claims that on one occasion [the alleged harasser] made comments to her about her sex life and her abilities in bed. [The complainant] stated that she protested *every time* [the alleged harasser] touched her breasts and she also protested when [the alleged harasser] would pat her buttocks." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 435-36 (5th Cir. 2005).

> When discussing a raise for the complainant, the alleged harasser told the complainant she was "sleeping with the wrong employee" for a raise (the complainant's boyfriend also worked for the same company); he also said this on other occasions, at least once in front of other people; at an office party, the alleged harasser placed his hand on the complainant's thigh, lifting her skirt a few inches, and took a picture of his hand on her leg, and also asked if he could go to her hotel room; five or six times the alleged harasser came up behind the complainant while she was working, put his hands on her neck or back, and "leaned into her"; alleged harasser called complainant "hot" and discussed what type of underwear she wore. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 601-02 (2d Cir. 2006).

The facts of this case are more similar to the second set of cases, and particularly *Schiano* (where there were instances of physical touching, and also multiple inappropriate and sexual comments, some in front of other people). The Employee's allegations are more severe than those in *Gupta* and *Hockman*. Move over, there were more instances of inappropriate comments by the Principal than were found sufficient in *Schiano*, and the Principal even called the Employee at home, and made sexual innuendos, which were missing in *Gupta*, asking her what she was wearing, and asking for photographs of the Employee.

10

Therefore, we conclude the alleged facts in this case were severe enough such that the severity of conduct factor should have been resolved by a jury decision, rather than a summary judgment decision.

*Physically Threatening or Humiliating*

In *Maldonado,* this Court explained that touching that was potentially accidental was not enough to be physically threatening. 939 So. 2d at 295-96. Although the Employee described one instance where the Principal may have accidentally touched her buttocks, she alleged multiple other occasions where the Principal purposely touched her in a sexual manner. Additionally, the Employee alleged that after touching her on the neck, the Principal made a comment to the effect that he would not ask her for a kiss, but next time, just kiss her. Therefore, the Employee did not know if the Principal would carry out this actual threat of physical unwanted touching. *Cf. Ellison v. Brady,* 924 F.2d 872, 880 (9th Cir. 1991) ("[The alleged harasser] . . . said he would [partake in the harassing conduct] again. [The complainant] had no way of knowing what [the alleged harasser] would do next.").

We are satisfied that the actions by the Principal also fall under the category of humiliating, particularly since multiple of the allegations occurred in the presence of other co-workers. *See Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1277 (11th Cir. 2002) ("[T]he testimony makes it clear that these incidents were humiliating and degrading to [the complainant]. The very nature of the coworkers' utterances, coupled with the fact that they were directed at [the complainant] and were sometimes used in the course of reprimanding him in front of others, establishes this factor."); *cf. Oncale,* 523 U.S. at 77 ("On several occasions, [the complainant] was forcibly subjected to sex-related, humiliating actions against him by [a co-worker and two supervisors] in the presence of the rest of the crew.").

The Employee alleged and testified in deposition that the Principal made a comment about touching the Employee's buttocks and referring to her as a "mango." That allegation was corroborated by the deposition testimony of a co-worker, as well as the fact that the Principal called the Employee "his boo" to the co-worker. Additionally, there was evidence to support that this co-worker and the Employee made a pact not to leave each other alone with the Principal, reducing the Employee to the necessity of a chaperone in the Principal's presence.

Therefore, we conclude the alleged facts in this case were arguably physically threatening or humiliating enough such that the physically

threatening or humiliating conduct factor should have been resolved by a jury decision, rather than a summary judgment decision.

*Unreasonable Interference with Job Performance*

The Supreme Court has explained:

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

> To show interference with one's employment sufficient to make a *prima facie* case of a hostile work environment, "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job."

*Smith v. Akstein*, 408 F. Supp. 2d 1309, 1328 (N.D. Ga. 2005) (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 567 (6th Cir. 1999)).

Here, although the Employee continued to work for the School Board, she eventually requested a transfer from the school. Additionally, prior to her request, there were additional interferences with the Employee's job performance. The Employee alleged that she made a pact with a co-worker not to be alone with the Principal, and that she stopped going to meetings in an effort to avoid the Principal. A co-worker testified at deposition that she told the Employee that the latter could be seen as insubordination, yet the Employee continued to avoid the meetings. Additionally, the Employee stated that she did not apply for an assistant principal position, because she thought that she would not receive the promotion based on the Principal's threats. These types of alterations are enough to constitute unreasonable interference with the Employee's job performance. *Compare Schiano*, 445 F.3d at 606 (finding it relevant that the complainant alleged

12

that she asked for a partition to be put up around her desk to keep the alleged harasser away from her), *and Johnson*, 234 F.3d at 509 (finding that the conduct unreasonably interfered with job performance where the employee "could not get along with her on-the-air co-host"), *with Maldonado*, 939 So. 2d at 296 (finding it insufficient that after her co-worker grabbed her buttocks, the complainant stated that "she quickly punched out without cleaning her . . . machine").

Therefore, we conclude the alleged facts in this case demonstrate unreasonable interference with the Employee's job performance such that the unreasonable interference with job performance factor should have been resolved by a jury decision, rather than a summary judgment decision.

*Conclusion*

As to the propriety of a summary judgment in favor of the School Board on the Employee's hostile work environment sexual harassment claim, the contested issue is whether the alleged sexually harassing behavior was pervasive enough to support the claim. Having reviewed the record regarding the four factors identified in *Maldonado* to determine whether offensive conduct was pervasive enough to support a hostile work environment sexual harassment claim, we determine that the Employee came forward with sufficient summary judgment evidence as to all four factors to defeat summary judgment. We therefore affirm summary judgment in favor of the School Board as to all of the claims alleged in the complaint, except for the hostile work environment sexual harassment claim. We reverse the summary judgment as to the hostile work environment sexual harassment claim and remand the case for further proceedings as to that claim.

*Affirmed in part, reversed in part, and remanded.*

GROSS and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**